**Opinion filed April 3, 2014**



## In The

# Eleventh Court of Appeals

_____

## No. 11-12-00128-CR

_____

## MARCUS C. LOTT, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 70th District Court**
**Ector County, Texas**
**Trial Court Cause No. A-39,308**

## M E M O R A N D U M   O P I N I O N

The jury convicted Marcus C. Lott, Appellant, of the offense of attempted capital murder[1]; made an affirmative deadly weapon finding; and, upon Appellant's plea of true to an enhancement allegation, assessed Appellant's punishment at confinement for ninety-nine years. The jury also convicted

---

[1]*See* TEX. PENAL CODE ANN. § 15.01 (West 2011), § 19.03 (West Supp. 2013).

Appellant, upon his plea of guilty, of the offense of possession of more than four ounces but less than five pounds of marihuana and the offense of possession of less than one gram of cocaine. The jury assessed Appellant's punishment at confinement for two years in a state jail facility for each of the drug-related convictions. The trial court ordered Appellant's sentences to run concurrently.

Although he perfected an appeal from all of the judgments of conviction, Appellant stated in his brief that this appeal encompasses only his conviction of attempted capital murder. Appellant challenges the sufficiency of the evidence and complains that the trial court abused its discretion when it (1) admitted evidence of Appellant's outstanding warrants and (2) denied his motion for mistrial. We affirm.

## I. *Evidence at Trial*

Max Chris Honesto, a Department of Public Safety trooper, testified that on May 25, 2011, he was assigned to monitor eastbound traffic on Interstate 20 as part of a criminal interdiction operation in Odessa, Texas. He stopped a Toyota Camry for speeding. After he pulled the Camry over, Trooper Honesto asked the driver to exit the Camry so he could speak to him safely on the side of the road. The driver identified himself as Alfonso Butler, and he told Trooper Honesto that he was driving from El Paso to the Dallas/Fort Worth area with his cousin and his cousin's girlfriend. Butler informed Trooper Honesto that he had recently been released from prison and stated he had a prison identification card but no driver's license.

Trooper Honesto then went back to the Camry to identify someone with a valid driver's license. When Ashley Simpson, one of the passengers in the Camry, opened a car door, Trooper Honesto immediately smelled fresh marihuana. Simpson identified herself but was nervous. As Simpson answered Trooper Honesto's questions, he detected discrepancies in her story and the story given by

2

Butler. Trooper Honesto also noted that, while he talked to Simpson, Appellant sat silently in the backseat and refused to make eye contact with him.

Trooper Honesto saw clear plastic bags, consistent with narcotics packaging, in the Camry. Although Simpson told him that the bags were from previously eaten sandwiches, Trooper Honesto did not believe her because the bags smelled strongly of marihuana. Trooper Honesto had Simpson and Appellant get out of the Camry. When Trooper Honesto asked Appellant to empty his pockets, Appellant produced several bags of marihuana, a bottle of Lortab pills, and a bag with a substance that was later identified as cocaine.

Trooper Honesto observed that Appellant refused to place any weight on his right foot, and he asked Appellant to remove his right shoe. Appellant bent down to remove his shoe but, instead, pulled out a .22 caliber pistol. Trooper Honesto pulled out his pistol and fired several shots toward Appellant, one of which struck Appellant in the leg. Appellant then fired several shots toward Trooper Honesto, one of which entered Trooper Honesto's right shoulder.[2] Trooper Honesto believed that he would not have survived the encounter with Appellant if he had not been the first to fire his weapon.[3]

Mario S. Garcia, another DPS trooper, testified that, after he observed Trooper Honesto and Appellant running in opposite directions on the side of the highway, he approached the scene to investigate.[4] Shortly after Trooper Garcia arrived at the scene, Appellant jumped in the driver's seat of the Camry while

---

[2]This action was the basis of Appellant's attempted capital murder charge.

[3]In conjunction with Trooper Honesto's testimony, the State presented the jury with video taken from the dashboard camera in his patrol car. The events shown in the video matched the testimony given by Trooper Honesto.

[4]In support of his testimony, the State presented the jury with video taken from the dashboard camera in Trooper Garcia's patrol car. The video evidence paralleled Trooper Garcia's testimony.

Simpson got in the front passenger seat. As Appellant fled, he rammed the Camry into Trooper Garcia's patrol car. Trooper Garcia then got out of his patrol car and demanded that Appellant stop. Appellant tried to strike Trooper Garcia with the Camry, and Trooper Garcia fired three rounds at the Camry.

Appellant drove eastbound on the interstate at speeds between 90 and 100 miles per hour. Trooper Garcia pursued Appellant and radioed Sergeant Hunter Lewis of the DPS to set up a roadblock. Sergeant Lewis testified that he set up road spikes along Appellant's intended path. Appellant eventually ran over these spikes, which punctured the Camry's tires. Appellant then lost control of his vehicle and crashed into a pole on the service road. Appellant threw his pistol out of the window. Appellant and Simpson surrendered and were arrested and taken into custody.

At trial, Butler testified in exchange for a reduced sentence on his charge of marihuana possession. Butler stated he asked Appellant to find him a ride to Texas so he could obtain a new address to report to his parole officer. Appellant agreed to help Butler in exchange for money and drugs. Appellant, Butler, and Simpson left from Memphis, Tennessee, and first traveled to Fort Worth, Texas. From Fort Worth, the group drove to El Paso, where Butler purchased a pound of marihuana. The group was headed back to the Dallas/Fort Worth area when they were pulled over by Trooper Honesto. Butler stated he smoked marihuana with Simpson and Appellant before they were pulled over.

Sergeant Lewis testified that he had been asked to verify Appellant's two outstanding warrants[5] and that he had confirmed the warrants were valid. The State offered into evidence copies of these warrants. Appellant objected to the paper warrants and argued that the evidence was prejudicially cumulative, given he

---

[5]One of these warrants was issued by the State of Kentucky, and the other was issued by the State of Tennessee.

4

had already judicially stipulated to the existence of the warrants. Appellant also argued that the copies of the warrants were not properly authenticated. The trial court overruled Appellant's objections and admitted the paper warrants into evidence.

Appellant testified he was homeless and addicted to drugs when Butler approached him in need of transportation to Texas. In spite of hospital records that showed he had only marihuana in his system immediately following his arrest, Appellant claimed he was high on marihuana, heroin, and Lortab when he shot Trooper Honesto. Appellant stated he did not intend to shoot Trooper Honesto and would not have done so in a state of sobriety. Appellant also stated he did not intend to strike Trooper Garcia's car and did not remember doing so.

On cross-examination, the State asked Appellant several questions concerning extraneous charges, some of which had resulted in his acquittal. This line of questioning violated Appellant's motion in limine that required the State to approach the bench before introducing his alleged violations of the law. Appellant did not object, ask for a curative instruction, or move for mistrial immediately following the State's improper questioning. The next day, Appellant presented a motion for mistrial based on the State's violation of his motion in limine on the previous day of trial. The trial court noted that Appellant had failed to object at the time of the alleged violation. The trial court denied the motion and found that any harm would be corrected by the curative instruction in the jury charge.

## II. *Issues Presented*

Appellant presents three issues on appeal, which we paraphrase:

(1)    Did the trial court abuse its discretion when it admitted into evidence copies of Appellant's two outstanding warrants after he had judicially stipulated to the existence of the warrants?

5

(2)    Did the trial court abuse its discretion when it refused to grant a mistrial based on the State's violation of Appellant's motion in limine?

(3)    Was the evidence sufficient to support Appellant's conviction of attempted capital murder?

### III. *Analysis*

We will address Appellant's sufficiency challenge first. We will then address his evidentiary issue, and finally, we will address the trial court's refusal to grant a mistrial.

### A. *Sufficiency of the Evidence*

Appellant argues in his third issue that the evidence was not sufficient to support his conviction of attempted capital murder. Appellant contends that the evidence failed to prove he acted with the requisite mental state when he shot Trooper Honesto. To support his argument, Appellant points to (1) his remorse, (2) his intoxication at the time of the offense, and (3) the small caliber of the gun used in the commission of the offense.

To address Appellant's sufficiency of the evidence challenge, we review all of the evidence in the light most favorable to the verdict and determine whether any rational jury could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319–20 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We may find the evidence to be insufficient in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; or (4) the acts alleged do not constitute the criminal offense charged. *Brown v. State*, 381 S.W.3d 565, 573 (Tex. App.—Eastland 2012, no pet.) (citing *Jackson*, 443 U.S. at 314, 318 n.11). If an appellate court

finds the evidence is insufficient under this standard, the court must reverse the judgment and enter an acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 40–41 (1982).

Testimony at trial, as to Appellant's acts and words during the commission of the offense, sufficiently supported the jury's finding that Appellant intended to kill Trooper Honesto. *See Godsey v. State*, 719 S.W.2d 578, 580–81 (Tex. Crim. App. 1986) (stating that the specific intent to kill may be inferred from the mere use of a deadly weapon unless, in its use, it is reasonably apparent that death or serious bodily injury could not result). The jury was free to disbelieve Appellant's testimony that he lacked the requisite intent to commit the offense of attempted capital murder when he shot Trooper Honesto. Appellant's third issue is overruled.

### B. Cumulative Evidence

Appellant argues in his first issue that the trial court abused its discretion when it admitted into evidence copies of two warrants that were outstanding at the time of his arrest. The standard of review for determining whether a trial court properly admitted evidence is abuse of discretion, which is a question of whether the court acted without reference to any guiding rules and principles. *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1991). A violation of the Texas Rules of Evidence by the trial court generally constitutes nonconstitutional error. *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007); *see Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Nonconstitutional error is disregarded unless it affected the defendant's substantial rights. *Gately v. State*, 321 S.W.3d 72, 77 (Tex. App.—Eastland 2010, no pet.). A defendant's substantial rights are affected when the error has a substantial and injurious effect on the jury's verdict. *Id.*

Appellant contends the evidence was cumulative and unfairly prejudicial, given he had already judicially stipulated to the existence of the warrants.

Appellant further claims that the evidence led the jury to improperly convict him based simply on his being a "bad man running from the law in two different states." Texas courts have long recognized cumulativeness as a factor that may allow a trial court to exclude relevant evidence. *Alvarado v. State*, 912 S.W.2d 199, 212 (Tex. Crim. App. 1995). However, where cumulative evidence is offered, exclusion is not mandatory but, rather, is only an alternative to be considered in promoting judicial efficiency. *Id.* And the cumulative nature of some evidence may heighten, rather than reduce, its probative force. *Id.* at 213.

In this case, the trial court could have assessed the cumulative nature of the paper warrants and ultimately determined that their probative value was not substantially outweighed by their detrimental effect on the efficiency of the trial process. Therefore, the trial court did not abuse its discretion when it admitted the paper warrants into evidence.

Even if we were to assume that the trial court erred when it admitted the paper warrants, which we do not, Appellant has not shown that his substantial rights were affected by the alleged error. Given that Sergeant Lewis also testified as to the contents of the warrants, the admission of the paper warrants provided the jury with no new information that would have led it to convict Appellant based solely on a belief that he was a "bad man." Appellant's first issue is overruled.

### C. Motion for Mistrial

In his second issue, Appellant contends that the trial court abused its discretion when it refused to grant a mistrial based on the State's violation of his motion in limine that required the State to approach the bench before it mentioned his alleged violations of the law. We review the trial court's denial of a motion for mistrial under an abuse of discretion standard; we also review the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Ocon v. State*, 284 S.W.3d 880, 884

8

(Tex. Crim. App. 2009). We will not reverse a trial court's denial of a motion for mistrial if it is within the zone of reasonable disagreement. *Id.*

Appellant did not object, ask for a curative instruction, or move for mistrial immediately following the State's violation of his motion in limine. Instead, Appellant waited until the following day of trial to present a motion for mistrial based on the State's conduct. The trial court denied the motion and found that any harm would be cured by the instruction in the jury charge regarding Appellant's extraneous charges. Appellant claims that the instruction did not sufficiently diminish the harm caused by the State's actions.

A mistrial is an appropriate remedy in "extreme circumstances" and is reserved for a narrow class of highly prejudicial and incurable errors. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). When a party moves for mistrial, the scope of appellate review is limited to whether the trial court erred in not taking the most serious action of ending the trial. *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004).

Here, the evidence did not establish an "extreme circumstance" warranting a mistrial. *See Ocon*, 284 S.W.3d at 887. Although Appellant did not object or ask for a curative instruction when his motion in limine was violated, the jury charge included a limiting instruction regarding the extraneous charges mentioned by the State. There is no indication that the curative instruction given to the jury failed to remedy any harm that may have been caused by the State's conduct, and the trial court's denial of Appellant's motion for mistrial was within the zone of reasonable disagreement. We overrule Appellant's second issue.

9

## IV. *This Court's Ruling*

We affirm the judgments of the trial court.

MIKE WILLSON

JUSTICE

April 3, 2014

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.